UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **1:23-mj-02257-Reid**

UNITED STATES OF AMERICA

v

**FREDERICK JOSEPH BERGMANN, JR.,**
    **Defendant.**
_____/

FILED BY __dgj__ D.C.
Feb 10, 2023
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIA

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?     Yes   X   No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?     Yes   X   No

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:   /s/ *Andrea Goldbarg*
      /s/ *Monica Castro*

ANDREA GOLDBARG
MONICA K. CASTRO
Assistant United States Attorneys
Court ID No. A5502556
Court ID No. A5502776
JLK Federal Justice Building
99 Northeast 4th Street
Miami, Florida 33132-2111
Telephone: 305-961-9000
Email: Andrea.Goldbarg@usdoj.gov
Email: Monica.Castro@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
для the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. 1:23-mj-02257-Reid |
| FREDERICK JOSEPH BERGMANN, JR., | ) | |
| | ) | |
| | ) | |
| Defendant(s) | | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of March 1, 2021 through July 7, 2021 in the county of Miami-Dade in the
Southern District of Florida, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiring to Commit an Offense Against the United States |
| 18 U.S.C. § 554 | Smuggling Goods from the United States |
| 13 U.S.C. § 305 | Providing Unlawful Export Information |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
Complainant's signature

HSI Special Agent David B. Mondanaro
Printed name and title

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by FaceTime

Date: February 10, 2023

_____
Judge's signature

City and state: Miami, Florida

Hon. Lisette M. Reid, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, David Mondanaro, being first duly sworn, hereby depose and state the following:

1. I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"), and have been since October 2008. As a Special Agent, I have participated in several investigations involving the smuggling of goods, including but not limited to narcotics, weapons, humans, counterfeit goods, and controlled technologies, into and out of the United States. I also have conducted investigations into the laundering of the funds associated with these offenses. Prior to my employment with HSI, I worked as a Customs and Border Protection Officer in both the commercial air and maritime environment along with international deployments to the country of Iraq to assist in border security operations with the United States Department of Defense. I have participated personally in the investigation of the offenses referred to herein.

2. This Affidavit is submitted for the limited purpose of establishing probable cause to charge and arrest Frederick Joseph BERGMANN Jr. ("BERGMANN") for (1) violating 18 U.S.C. § 371, conspiring to commit an offense against the United States by (a) smuggling goods from the United States in violation of 18 U.S.C. § 554;[1] and (b) causing export information not to be filed in violation of 13 U.S.C. § 305;[2] (2) violating 18 U.S.C. §§ 554 and 2 by smuggling goods from the United States, and aiding and abetting the same; and (3) violating 13 U.S.C. § 305 and 18 U.S.C. § 2 by causing export information not to be filed, and aiding and abetting the same.

---

[1] 18 U.S.C. § 554 provides "[w]hoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States, shall be [guilty of a crime]."

[2] 13 U.S.C. § 305(a)(1) provides, in relevant part, "[w]hoever knowingly fails to file or knowingly submits false or misleading export information through the Shippers Export Declaration (SED) (or any successor document) [*i.e.*, the Electronic Export Information ("EEI")] or the Automated Export System (AES) [is guilty of a crime]."

3. I am personally involved in this investigation, along with other law enforcement agents, including the Federal Bureau of Investigation ("FBI"). Because this Affidavit is being submitted for the limited purpose of establishing probable cause, it does not contain all of the information known about this investigation. The facts and information contained in this Affidavit are based on my personal knowledge and observation, as well as information received in my official capacity from other individuals, including other law enforcement officers involved in this investigation, as well as the review of records, documents, and other physical items obtained during the course of this investigation.

**PROBABLE CAUSE**

*Overview of the Plot to Depose and Assassinate President Moise*

4. On July 7, 2021, the President of Haiti, Jovenel Moise ("President Moise" or the "President"), was assassinated in his residence in Port-au-Prince, Haiti. The First Lady ("M.M.") suffered multiple gunshot wounds. M.M. survived and received medical treatment in the United States.

5. According to statements made by Haitian authorities and a medical examiner's report detailing an autopsy performed by Haitian officials, the President was shot twelve times and died as a result. Haitian authorities arrested and detained numerous individuals in connection with the assassination, including dual Haitian-American citizens James Solages, a/k/a "Yakov," a/k/a "Junior" ("Solages"); Joseph Vincent, a/k/a "Blanco," a/k/a "Mr. White" ("Vincent"), and Christian Emmanuel Sanon, a/k/a "Kumbe," a/k/a "Pumba," a/k/a "Bubba" ("Sanon"), as well as a number of Colombian nationals, including German Alejandro Rivera-Garcia, a/k/a "Colonel Mike" ("Rivera"). In addition to Solages, Vincent, Rivera, and Sanon, each of whom has been

2

charged in the United States,[3] the United States separately charged Mario Antonio Palacios Palacios ("Palacios"), a Colombian citizen; Rodolphe Jaar ("Jaar"), a Haitian-Chilean citizen; and Joseph Joel John ("John"), a Haitian citizen. Palacios, John, and Jaar each fled Haiti after the assassination and were taken into U.S. custody from Jamaica (Palacios and John) and the Dominican Republic (Jaar).[4]

6. Through witness interviews and the review of records and seized electronic evidence, the investigation has revealed that beginning in or around February 2021, Arcangel Pretel Ortiz, a/k/a "Colonel Gabriel" ("Ortiz"), and Antonio Intriago, a/k/a "The General" ("Intriago"), as principals of two related South Florida-based companies, Counter Terrorist Unit Federal Academy and Counter Terrorist Unit Security (collectively "CTU"), entered into an agreement with Sanon, who opposed President Moise's administration and was interested in becoming President of Haiti. At the end of April 2021, another South Florida company, Worldwide Capital Lending Group ("Worldwide"), and its principal Walter Veintemilla, agreed to finance CTU's support of Sanon.[5] By that time, it had been decided that Sanon should become President of Haiti, and the plan to do so centered on fomenting a public uprising aimed at ousting President Moise. Ortiz and Intriago, through CTU, and Veintemilla, through Worldwide, expected

---

[3] Sanon has been charged by separate complaint with the same crimes alleged herein. *See United States v. Sanon*, Case No. 22-mj-4161-McAliley. Solages, Vincent, and Rivera have been charged by separate complaint with the following violations: (1) 18 U.S.C. § 2339A, providing material support and resources resulting in death, and conspiring to do so, knowing or intending that such support and resources are to be used to prepare for, or carry out, a violation of 18 U.S.C. § 956, which prohibits among other things conspiracy to murder or kidnap outside the United States; and (2) 18 U.S.C. § 956(a)(1), conspiring to kill or kidnap outside the United States. *See United States v. Solages et. al.*, Case No. 23-mj-02178-AOR.

[4] Palacios, Jaar, and John have been charged by indictment with the same crimes as alleged against Solages, Vincent, and Rivera. *See United States v. Palacios et. al.*, Case No. 22-cr-20104-JEM(s)(s).

[5] Concurrently herewith, the United States has submitted a complaint under seal to charge Ortiz, Intriago, and Veintemilla with the following violations: (1) 18 U.S.C. § 2339A, providing material support and resources resulting in death, and conspiring to do so, knowing or intending that such support and resources are to be used to prepare for, or carry out, a violation of 18 U.S.C. § 956, which prohibits among other things conspiracy to murder or kidnap outside the United States; and (2) 18 U.S.C. § 956(a)(1), conspiring to kill or kidnap outside the United States.

3

to reap significant financial benefits should Sanon secure the Presidency, largely by being awarded contracts for (i) sizeable infrastructure projects in Haiti, (ii) the provision of security forces, and (iii) the provision of military-type equipment to a Sanon-led Haitian government.  Sanon brought in BERGMANN to provide financial advice. BERGMANN contributed resources, including helping provide funds for the lodging of the Colombian nationals in Haiti and travel of Solages, intended to help depose President Moise and install Sanon as President.

7.      Beginning in or around April 2021, and continuing through early June 2021, Ortiz and Intriago, as principals of CTU, retained a group of approximately 20 Colombian nationals with military training (including Rivera and Palacios) purportedly to provide security for Sanon. CTU, Worldwide, and BERGMANN began expending funds with the expectation that Sanon would be able to replace President Moise, at which time CTU claimed that it would contract, fly in, and outfit hundreds of additional Colombian nationals to protect Sanon and train Haitian law enforcement.  As the plan evolved, Ortiz, Intriago, Veintemilla, and others apparently realized that Sanon had neither the constitutional qualifications nor the popular support of the Haitian people to become President.  Therefore, they shifted their support to a former Haitian Supreme Court judge ("Individual-2"), after Individual-2 contracted with CTU and Worldwide to serve their financial interests when Individual-2 was installed as President.  The plan to remove President Moise from office involved attempts to remove him physically from power, including an unsuccessful effort to seize President Moise when he returned from a trip and spirit him away by airplane to a location outside of Haiti.  When that failed, the plan ultimately changed to using the Colombian nationals to assassinate the President, after which those involved expected that Individual-2 would be sworn in as President and grant them immunity from Haitian prosecution for their criminal conduct.

*Coup d'État Meetings in the Southern District of Florida*

8. Electronic records and other evidence establish that, during meetings in April and May 2021, in the Southern District of Florida, BERGMANN, Sanon, Ortiz, Intriago, Veintemilla, and others discussed providing funding and/or acquiring military equipment to facilitate their plan to remove President Moise from power and replace him with Sanon, who then would direct valuable infrastructure and/or government contracts to the companies owned by Ortiz, Intriago, and Veintemilla.

*Shipment of Ballistic Vests*

9. BERGMANN provided significant funding and support to remove President Moise from power, including working with Sanon and Intriago to ship 20 CTU-branded ballistic vests,[6] which were shipped without the required export license from the United States Department of Commerce[7] and without the required export information filing,[8] from the Southern District of Florida to Haiti on or about June 10, 2021.

10. On or about May 17, 2021, CTU and Sanon entered into a contract whereby CTU agreed to provide Sanon with the equipment needed to support Sanon's "private military" forces. Pursuant to this "consultant agreement," CTU provided approximately 25 ballistic vests, among

---

[6] CTU's ballistic vests were affixed with CTU patches and labels.

[7] The United States Department of Commerce, Bureau of Industry and Security ("BIS"), which is authorized under the Export Control Reform Act to administer the Export Administration Regulations, conducted a license check of CTU's ballistic vests that were used in furtherance of the assassination. BIS determined that (i) an export license was required for the shipment to Haiti of CTU's ballistic vests, which were designated on the Commerce Control List as Export Control Classification Numbers ("ECCN") 1A613.d.1 and 1A613.d.2; (ii) no relevant license exception existed; and (iii) no one had applied for an export license that would have authorized the shipment of the ballistic vests to Haiti.

[8] The June 10, 2021, shipment of CTU's ballistic vests to Haiti required an EEI filing through the AES, because the ballistic vests required a license to export to Haiti and the total value of the ballistic vests was over $2,500. 15 C.F.R. §§ 758.1 and 30.2. No EEI was filed.

5

other things, for use by those in Haiti, including the Colombian nationals hired by CTU in support of this contract.

11. On or about May 21, 2021, Sanon and Intriago transported approximately five CTU-branded ballistic vests aboard a private flight from the Southern District of Florida to Haiti and provided some of these vests to the Colombian nationals.

12. On or about early June 2021, BERGMANN suggested to Intriago that they ship CTU's ballistic vests to Haiti for use by the Colombian nationals working on behalf of Sanon through a company (the "Shipping Company") that BERGMANN had used in the past to ship medical supplies to Haiti for BERGMANN's Florida-based company, GCP Clinical Research, LLC.

13. On or about June 8, 2021, BERGMANN and Intriago exchanged messages regarding shipping the ballistic vests from Florida to Haiti on or about June 10, 2021. During those exchanges, Intriago advised BERGMANN that BERGMANN could "send the vest [sic] as paintball protection vest [sic]," and BERGMANN responded: "I don't think they'll have a problem having my research company ship x-ray protective vests."

14. On or about June 9, 2021, BERGMANN texted to Sanon copies of the commercial invoice and shipper's letter of instruction that falsely claimed that the ballistic vests to be exported were "medical x-ray vests," to which Sanon responded: "I got it thank you."

15. Also, on or about June 9, 2021, BERGMANN texted Sanon and Intriago regarding the logistics of shipping the ballistic vests to Haiti, stating: "Christian [Sanon] the plane arrives in Port-au-Prince at 2:30 PM tomorrow. I Assume [sic] that [an identified individual in Haiti ("Individual-1")[9]] will handle customs including any fees and the coordination of ultimate delivery

---

[9] Individual-1 is the same Individual-1 in related case *United States v. Sanon*, Case No. 22-mj-4161-McAliley.

6

of the supplies will be handled but [sic] you guys on the ground." Sanon replied: "Confirmed." BERGMANN later texted Sanon to see if the ballistic vests had cleared customs in Haiti, to which Sanon replied "not yet."

16. Also, on or about June 9, 2021, BERGMANN texted Sanon regarding shipping CTU's ballistic vests to Haiti for use by the Colombian nationals providing security to Sanon, stating: "These guys say they were ready and waiting for surgical instruments but no x-ray vests?" to which Sanon said: "What?" BERGMANN responded: "The X-ray vests that are coming tomorrow: seems like they needed these?" Sanon replied: "Yes they do."

17. On or about June 10, 2021, BERGMANN texted Sanon, stating: "Should be fine. Please explain to [Individual-1] we have to use these type of vests so health care providers can be protected from harmful effects of x-rays?" Sanon responded: "Ok I will let him know that."

18. On or about June 10, 2021, BERGMANN and Intriago shipped 20 CTU-branded ballistic vests from the Southern District of Florida to Haiti. BERGMANN arranged, paid, and completed the shipping paperwork for the shipment of the ballistic vests. Intriago delivered the packaged vests to the Shipping Company. Sanon coordinated the customs processing and delivery of the vests to the Colombian nationals in Haiti.

19. I have reviewed the shipment declarations and forms that BERGMANN provided to the Shipping Company in relation to the export of the ballistic vests. These documents, dated on or about June 10, 2021, falsely stated that (i) the items being shipped were "medical x-ray vests and school supplies"; (ii) the value of the vests was $1,000 total, which was significantly below their actual value; (iii) the exporter was GCP Clinical Research, LLC; and (iv) the consignee in Haiti was a medical services provider, C/O Individual-1. BERGMANN signed the shipper's letter of instruction and commercial invoice, which above the signature line stated that: "These commodities are licensed for the ultimate destination shown. Diversion contrary to United States

7

law is prohibited. I declare all the information contained in this invoice to be true and correct." Because the ballistic vests required an export license to ship to Haiti and were valued over $2,500, an EEI filing was required for this export. BERGMANN, however, provided false export information to the Shipping Company and thereby caused the Shipping Company to fail to file the requisite EEI for this export.

*The Assassination*

20. According to witness interviews and electronic evidence, on or about July 7, 2021, several individuals drove a convoy to President Moise's residence. Solages, Rivera, and Vincent traveled together in one of the vehicles. Once the group of individuals arrived outside the residence, Solages falsely announced to those inside the residence that they were engaged in a "DEA Operation" in an attempt to ensure compliance by President Moise's security (some of whom had been bribed to comply with these commands with funds provided by Jaar) and other civilians. A subset of Colombian nationals, including Palacios, was assigned to find the President and assassinate him, and in fact the President was killed.

21. A few hours after the assassination, on or about July 7, 2021, BERGMANN texted an individual: "It happened," and "Battle right now." This text was sent to the same person who on June 2, 2021 asked BERGMANN: "What time is the next Coups [sic] meeting."

22. On or about July 7, 2021, after calling Sanon multiple times, Ortiz messaged Sanon asking Sanon to call another individual and sending to Sanon photographs of certain Colombian nationals and Solages hiding from Haitian authorities. In these photographs, the Colombian nationals appear to be wearing the CTU-branded ballistic vests that were shipped to Haiti.

23. On or about July 7, 2021, BERGMANN texted to Sanon a news article stating that President Moise had been murdered and asked: "R u ok ????" Sanon responded: "Yes I am" "And safe." BERGMANN replied: "Thank god. What about the guys. I have been so worried." Sanon

8

texted that: "There was a diplomatic vehicle that crossed over to reach them" and "I don't know what is happening." BERGMANN responded: "It's time for people to hit the streets." Sanon replied: "The leaders are working on that," and BERGMANN stated that: "we are all on standby once you know what is going on."

24. Based on the foregoing, your Affiant respectfully submits that there exists probable cause to believe that BERGMANN committed the offenses of (1) Conspiracy to Commit an Offense Against the United States, in violation of 18 U.S.C. § 371, by (i) Smuggling Goods from the United States, in violation of 18 U.S.C. § 554; and (ii) Providing Unlawful Export Information, in violation of 13 U.S.C. § 305; (2) Smuggling Goods from the United States, and Aiding and Abetting the same, in violation of 18 U.S.C. §§ 554 and 2; and (3) Providing Unlawful Export Information, and Aiding and Abetting the same, in violation of 13 U.S.C. § 305 and 18 U.S.C. § 2.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
Special Agent David Mondanaro
Homeland Security Investigation

Attested to by the applicant in accordance with the requirements
of Fed. R. Crim. P. 4.1 by FaceTime this 10th day of February 2023.

_____
HONORABLE LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA

9